## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DAVIDA SCHUMAN, Ph.D.                    :

        Plaintiff                    :

        v.                    :          Civil Action No.:

KEAN UNIVERSITY;                    :
DAWOOD FARAHI, Ph.D.,
in his official and individual capacities;    :
JEFFREY TONEY, Ph.D.,
in his official and individual capacities;    :
KENNETH GREEN, Esq.,
in his officialand individual capacities;    :
COREY  VIGDOR,
in his official and individual capacities;    :
BRIDIE CHAPMAN, Ph.D.
in her official and individual capacities,    :

        Defendants                    :

## COMPLAINT AND JURY DEMAND

NOW COMES Davida Schuman, Ph.D., a tenured professor at Kean University, a public University of the State of New Jersey, pursuant to the First and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983, seeking declaratory and injunctive relief, and compensatory and punitive damages against the named Defendants, and states:

## INTRODUCTION

This lawsuit involves the violation of the constitutional rights of Dr. Davida Schuman, a tenured professor at Kean University, a public university of the State of New Jersey. In 2018, Plaintiff was charged with violating the New Jersey Policy Prohibiting

Discrimination in The Workplace (the "Policy"), N.J.A.C. 4A:7-3.1, *et seq.* The Policy is facially unconstitutional because it is not content or viewpoint neutral and is defectively vague and overbroad. Kean University sustained the charges of discrimination without an evidentiary hearing, following which it imposed disciplinary actions against Plaintiff, which included withdrawing her from the classes she was scheduled to teach during the Spring, 2019 term; giving her a non-teaching assignment instead, which entailed performing daily research projects in the university library; requiring that she undergo diversity training; and placing a letter of reprimand in her personnel file. These actions are currently on appeal before the Superior Court of New Jersey, Appellate Division.

In September, 2019, the University informed Plaintiff that, despite the fact she had already completed the prior disciplinary actions, and without any additional claims of improper conduct, it was giving her a second non-teaching assignment based on her purported prior violation of the Policy, and based on purportedly confidential information which the University had obtained by virtue of Plaintiff's participation in the diversity training.  Defendant Kenneth Green, Esq. the University's Chief Labor Counsel, has refused to divulge this "confidential information" to Plaintiff despite numerous requests that he provide Plaintiff with a copy of the document which was generated as part of the diversity training but which has not been placed in her personnel file. Under this second non-teaching assignment. Plaintiff is being required to take a class for which she is being graded. Since this second non-teaching assignment has been imposed after the appeal was filed, it is not included in the appeal pending before the New Jersey Superior Court, Appellate Division. Because the Policy under which these punitive actions have been taken is unconstitutional, giving Plaintiff additional disciplinary action for allegedly

violating the unconstitutional Policy, and using information which was obtained by virtue of the diversity training which was itself unconstitutionally assigned to Plaintiff, and without any hearing and based on purported confidential information which the University will not provide to Plaintiff, the University has violated, and continues to violate, Plaintiff's rights under the 1st Amendment, her procedural due process rights under the 14th Amendment, her liberty interest under the 14th Amendment, and substantive due process rights under the 14th Amendment.

## JURISDICTION AND VENUE

1.    This action arises under the First and Fourteenth Amendments of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1983 and 1988.

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3.    Venue is proper in the District of New Jersey under 28 U.S.C. § 1391 because the events giving rise to the claims detailed herein occurred in and within the District of New Jersey.

## PARTIES

4.    Plaintiff Davida Schuman, Ph.D. is a tenured professor at Kean University where she has been teaching since 1967.  She obtained tenure in 1970 and has been a Professor of Literacy in the Department of Special Education and Literacy. Plaintiff resides in Brooklyn, New York.

5.    Defendant Kean University ("Kean" or "University") is a public university of the State of New Jersey, with its main campus located in Union, New Jersey.

6.    Defendant Dawood Farahi, Ph.D. is the President of Kean.

7.     Defendant Jeffrey Toney, Ph.D. is the Provost and Vice President for Faculty and Research at Kean.

8.     Defendant Kenneth Green, Esq. is the Chief Labor Counsel for Kean.

9.     Defendant Corey Vigdor is the Acting Associate Dean at The School of Online Learning.

10.    Defendant Bridie Chapman, Ph.D. is the Executive Director of the School of General Studies at Kean.

## FACTUAL ALLEGATIONS

11.    On February 1, 2018, Plaintiff Davida Schuman, who is Jewish, sent an email to a Jewish colleague at Kean, Dr. Diane Tracey, with whom Plaintiff had had a rather fractious relationship. In the email, Plaintiff made some critical remarks regarding what she regarded as Dr. Tracey's lack of commitment to Judaism and Jewish culture.

12.    On May 24, 2018, Dr. Charlie Williams, Director of Affirmative Action Programs at Kean, sent a letter to Plaintiff in which he indicated that Dr. Tracey had filed a Complaint against Plaintiff alleging that she had violated the New Jersey Policy Prohibiting Discrimination In The Workplace ("Policy") by engaging in religious discrimination by virtue of the statements in her Feb. 1 email. Dr. Williams also indicated that students in one of Plaintiff's Fall, 2017 classes claimed she had made "offensive racial/ethnic references."

13.    Enclosed with the letter were documents titled "New Jersey State Policy Prohibiting Discrimination in The Workplace," Exhibit 1, and "New Jersey State Model Procedures for Internal Complaints Alleging Discrimination in The Workplace" ("Procedures").  Exhibit 2.

4

14.     Schuman and Tracey were hierarchical co-equals. It is undisputed that Plaintiff at no point took any adverse employment action against Dr. Tracey and that, moreover, she had absolutely no ability or authority to do so.

15.     Plaintiff retained an attorney to represent her regarding this matter. On August 1, 2018, Williams sent an email to Plaintiff, copied to her attorney, indicating he was providing additional information regarding his investigation of Tracey's Complaint. Williams indicated some students in Plaintiff's Fall, EDUC 3400 05 class alleged she had made "insensitive racial and ethnic remarks during the class and in some instances, these remarks were directed at specific students." According to Williams the students alleged Plaintiff had commented about a student's accent, had made comments about people of Cuban descent, and had made "insensitive comments about African American/Blacks" by referring to them as 'Negroes.'"

16.     As part of an investigation of the charges, Williams interviewed Plaintiff, at which time Plaintiff provided Williams with a statement presenting her position regarding the charges. While she acknowledged that she had sent the email in question to Tracey, she indicated that it was intended as a private conversation as a "commentary that related to our shared religious background and the very strong feelings I have because of my experiences as a victim of prejudice and discrimination." She denied the students' claims that she had spoken disrespectfully of African-Americans or had made disrespectful comments about a student's accent or about individuals of Cuban descent.

17.     On August 27, Audrey Kelly, Chief of Staff of the Office of University President Dawood Farahi, sent a letter to Plaintiff stating that it was a "final determination" and that it had been determined that Plaintiff had violated the Policy by

making demeaning and derogatory remarks in her email to Tracey and by comments to a student related to her name, accent, and manner of speaking English. The "final determination" also indicated that her alleged "comments about Cubans and African Americans" did not constitute a violation of the State Policy." The "final determination" did not state that any disciplinary action was going to be imposed on Plaintiff for the finding that she had violated the Policy.  The letter indicated that if she wished to appeal the decision, she had to submit a written appeal to the New Jersey Civil Service Commission within twenty (20) days.

18.    Plaintiff's attorney timely filed an appeal with the Commission on September 13, stating that Plaintiff contested the determination she had violated the Policy and requested that the decision be reversed.

19.    On October 1, 2018, Mr. Christopher Myers, Director of the Civil Service Commission, sent a letter to Plaintiff's attorney stating that the appeal was being dismissed because the Commission did not have jurisdiction over appeals by university professors contesting a ruling that they had violated the Policy.

20.    In accordance with *N.J.A.C.* 4A:2-1.6, on November 1, Plaintiff's attorney filed a Motion for Reconsideration within forty-five days of the Director's October 1 decision denying jurisdiction. He noted in the motion that *N.J.A.C.* 4A:7-3.2(m), cited in Myers' letter, applies to the appellate rights of a complainant who has filed a discrimination charge under the Policy and restricts such appeal rights to employees "in the career, unclassified, or senior executive service." By contrast, *N.J.A.C.* 4A:7-3.2(n), provides, "where a violation has been substantiated <u>and no disciplinary action recommended</u>, the party against whom the complaint was filed may appeal the

determination to the Civil Service Commission at the address indicated in (m) above within 20 days of receipt of the final letter of determination by the state agency head or designee." Unlike Subsection (m), Subsection (n) was not restricted to employees in the career, unclassified, or senior executive service, but applied to any New Jersey employee charged with a violation of the Policy, where the charge was substantiated but no disciplinary action was recommended, which was the case with regard to the August 27, 2018 "final determination" issued by the University. The attorney accordingly requested that Plaintiff's appeal to the Civil Service Commission be reinstated.

21.     On January 2, 2019, Myers sent a letter to Plaintiff's attorney rejecting the Motion for Reconsideration, reiterating the Commission's position that professors charged with a violation of the Policy are precluded from filing an appeal with the Commission because they are not subject to Title 11A.

22.     Thereafter, on January 14, 2019, Defendant Toney sent a letter to Plaintiff, stating "[p]lease be advised that pursuant to Article XII of the State of New Jersey and Council of New Jersey State College Locals, AFT, AFL-CIO collective negotiation agreement, you are being assigned to a non-teaching assignment effective January 22, 2019 for the Spring 2019 Semester. You are directed to report to Dr. Anthony Pittman, Acting Dean, College of Education, in Hennings Hall Room 445 on Tuesday, January 22, 2019 to receive your non-teaching assignment." This letter was sent imposing the non-teaching assignment notwithstanding that the "final determination" sent to Plaintiff on August 27 did not suggest or imply that any disciplinary action was being or would be imposed on her for purported violations of the Policy.

23.     The following day, January 15, 2019, Jennifer Peters, Director of the

Office of Human Resources, sent Plaintiff a letter stating the Office of Affirmative Action Programs had concluded its investigation of complaints filed against her and the matter had been referred to her office for appropriate action. After first reiterating that it had been determined that Plaintiff had violated the Policy, Peters indicated, "A review of your conduct revealed that you made demeaning and/or derogatory religious-based comments as well as offensive racial and/or ethnic references" in violation of the Policy. The letter thus contradicted the "final determination" by holding that Plaintiff's alleged remarks about African-Americans and Cubans violated the Policy; remarks which Plaintiff denied making and which the "final determination" indicated did not violate the Policy. The letter also added new charges that Plaintiff had violated the University's policy relating to the implementation of the school's student evaluation program, and had committed "conduct unbecoming" of a professor. The letter indicated that it was being placed in Plaintiff's personnel file as a written reprimand and that she was required "to complete an Affirmative Action Programs training delivered by the American Conference on Diversity." Peters' letter thus imposed additional discipline, contrary to the "final determination" which did not suggest that any discipline was being considered for purported violations of the Policy.

24.    As part of her non-teaching assignment, Plaintiff was given a schedule which outlined her daily assignments, beginning on Jan. 22, 2019, thru June 28, 2019. The schedule provided that Plaintiff was required to sign in every day at 9:00 a.m. and sign out at 5 PM. She was given a designated time for lunch from 12-1 p.m. Each day specified a research project that Plaintiff was required to perform, rather than teaching the four classes she was originally scheduled to be teaching during the Spring 2019 term.

While Plaintiff was paid her full salary during the period of the non-teaching assignment, because she was not teaching any classes, the non-teaching assignment deprived her of the opportunity to apply for other teaching assignments which she regularly conducted during the summer and for which she would have earned additional income.

25.     Plaintiff participated in the Affirmative Action diversity training required by Peters' letter. The training was conducted by Mrs. Elizabeth Williams-Riley. Mrs. Riley does not have a degree in psychiatry or psychology. She is not a licensed or certified counselor. She has a BA degree in advertising and public relations from the University of Central Florida and promotes herself as, "[a] nationally recognized facilitator and trainer, [who] provides insight and guidance in higher education as well as with companies from throughout the public and private sectors to implement inclusive leadership, healthcare disparities, conflict management, cross-cultural communication, advocacy and social justice initiatives." Mrs. Riley assured Plaintiff that everything they discussed would be kept strictly confidential. During the diversity training sessions, Mrs. Riley would present Plaintiff with various perspectives relating to issues of race, ethnicity and gender consciousness, ask Plaintiff's opinion regarding the issue and then they would discuss her responses. On one occasion, Mrs. Riley gave Plaintiff an article to read the thesis of which was that all Caucasians are the beneficiaries of white privilege, an opinion with which Plaintiff took issue.

26.     The legality and constitutionality of the above disciplinary actions are the subjects of the pending consolidated appeal before the New Jersey Superior Court, Appellate Division.

27.     Regarding the manner in which non-teaching assignments would be made

by the University, Article XII(B)(7) of the parties' Collective Negotiated Agreement ("CNA"), provides that "[t]he [University] President, or his or her designee, prior to the commencement of each semester, and prior to the allocation of non-teaching assignments to various purposes and individual faculty members, will consult with the UNION as to such allocations and the contemplated manner of selecting individual faculty members who will receive them." On August 14, 2019, Defendant Green sent Plaintiff's union representative, Bennett Muraskin, an email, stating:

> Please be advised that a consultation with the Union regarding Plaintiff will involve the discussion of confidential affirmative action training she participated in and which she has the right to keep confidential. In that regard, I have drafted a very quick (hope there are no typos) Release for the limited purpose of allowing the University to divulge confidential information to the Union as part of the Article XII(B)(7) process.

28.     Defendant Green included with the email the proposed Release which he required that Plaintiff sign before the University would comply with the requirement that it confer with the union regarding issuing non-teaching assignments in accordance with the CNA. Exhibit 3. The Release stated, in relevant part that

> [p]rior to the possibility of an assignment of non-teaching duties for the Fall 2019 semester to Schuman, Article XII(B)(7) of the Master Agreement requires consultation with the Union. In the instant matter, consultation will require the discussion of the content of confidential affirmative action training participated in by Schuman with the Union."

The Release essentially provided that Plaintiff waiving the confidentiality of the information referred to and released the University from a potential liability by virtue of its disclosure of the information to the union.

29.     Plaintiff did not know what the confidential information which Green was referring to was. After consulting with her attorney, Plaintiff refused to sign the Release.

30.     On August 20, Green sent Muraskin an email, which stated: "Let me clarify Kean's position. We will not speak, without a release, regarding any confidential issues related to Plaintiff with the Union. We are willing to consult with the Union and discuss any non-confidential matters."

31.     Muraskin met with Green, at which time Green conveyed the University's position as follows: The University was going to give Plaintiff a non-teaching assignment for the upcoming Fall semester, based on the results of the diversity training the University administered, which indicated that she could not be expected to comply with the State's anti-discrimination policy in her interactions with students. Green refused to provide Muraskin with the report that had apparently been prepared by Mrs. Riley, based on confidentiality issues.

32.     On August 30 (misdated September 30), Toney emailed Plaintiff a letter, stating in relevant part:

> Please be advised that pursuant to Article XII of the State of New Jersey and Council of New Jersey State College Locals, AFT, AFL-CIO collective negotiation agreement, you are being assigned a non-teaching assignment effective September 3, 2019. Your assignment will be focused on research of literacy.
>
> You are directed to report to me at Townsend Hall, Room 129 on Tuesday, September 3, 2019 at 3:00 pm to receive you non-teaching assignment and related administrative directives.
>
> Thank you for your anticipated cooperation.

33.     Upon information and belief, the decision to give Plaintiff a second non-teaching assignment was authorized by Defendant Farahi.

34.     Plaintiff met with Defendant Toney on  Sep. 3rd as directed. During the meeting, Toney explained that he would be providing Plaintiff with a list of weekly

research assignments which she would be required to complete by Friday of every week and submit a written report summarizing her research.

35.     On September 4, Plaintiff received an email from Toney's office which stated, in relevant part

> Please note aside from your non-teaching assignments discussed with you yesterday, you are directed to sign-in into this office daily, if you are out on any given day please email me and cc Dr. Toney in advance. In conversation during the meeting we informed you that medical accommodations or extended medical leave would need to be given to ... the Human Resource Office.

The email listed weekly dates from 08/31/19 through 12/0719 for which assignments would be given. Attached to the email was a document titled "Fall 2019 non-teaching assignment Dr. Davida Schuman" which identified the assignments for the first four weeks. (Exhibit 4, attached) The first assignment stated:

> Write a five page paper analyzing the article below. Critique the approaches discussed, citing the latest literature on literacy using a minimum of 20 recent peer-reviewed scholarly articles that connect directly to the topic: **Due on end of business, Friday, September 6.**
>
> *The New York Times:* Reading Taught the Wrong Way
> https://nyti.ms/2AufnKw

(Emphasis in the original.)

Consequently, Plaintiff was being given three days to search for and select 20 "recent peer-reviewed scholarly articles," read the articles, write a five-page summary, and submit the report for Toney's review. Toney was treating Plaintiff not as a professional peer with a Ph.D. and 50 years of college level teaching experience, but as the equivalent of an undergraduate student who was being required to perform research, write a report on the research, and submit the report for grading. In addition, Plaintiff,

who suffers from arthritis and sciatica, was being required to walk across campus in order to sign in at Toney's office, and walk back across campus to her office located in the university library, causing her extreme pain.

36.     On September 4, Plaintiff sent Defendant Green a request that he provide her with a copy of the report written by Mrs. Riley which he had claimed was confidential and upon which he relied as a basis for giving Plaintiff a non-teaching assignment. Green replied by email on September 9 that he would respond to her request "in short order."

37.     On September 5, Plaintiff sent an email to Defendant Toney indicating that he had given her only three days to complete the first assignment that would take her at least seven days to complete. She requested an extension to complete the task by September 10, at 4 p.m.

38.     Defendant Toney responded to Plaintiff's request for an extension on September 5, saying

> The assignment for week 1 was developed to be completed on or by Friday, September 6. As discussed in our meeting on September 3, you were assigned the same article during the Spring 2019 term and are already familiar with the content. Your request for an extension is denied.

Toney's assertion that Plaintiff had previously been given a similar assignment during her prior non-teaching assignment was erroneous. The prior assignment required that Plaintiff review syllabi of teacher preparation programs nationwide and locate the top 10 syllabi in effective reading instruction. That assignment was vastly different from identifying 20 peer reviewed articles on the subject of effective methodologies for teaching reading.

39.     On September 11, Plaintiff sent Defendant Toney an email attaching

5 articles that I have read and written about. I thought I had
20 articles to use but many of the articles are not germane
to the topic of Hanford's NYT Opinion article.  I have
spent an average of 10 hours a day since September 4 to
September 11 on the assignment you gave me on
September 3. I will continue with this assignment
tomorrow and Friday.

40.     On September 13, Toney sent Plaintiff an email which stated, in relevant

part:

Initially, please note that your assignments have been
designed to be completed well within the required
deadlines and are at the level of a typical graduate program.
As a specialist in literacy, my expectation is that you will
complete all assignments by the deadlines, if not earlier. As
a courtesy, I will excuse your late submission of the first
assignment even though you were assigned the same article
during Spring 2019 and were already familiar with the
contents.
                              . . .

My assessment of your submitted paper is as follows:

Your submission was approximately 1 ¼ pages, far below
the required five pages. Please be advised that, while I will
excuse this deviation from the express directive on this
occasion, it is my expectation that you will substantially
and/or fully comply with my directives moving forward.
Please be aware that future failures to follow my express
directives may result in the consideration of corrective
action as to your conduct.

Further, it is not a critique, as you were directed to
complete. Rather, your narrative is a perfunctory, poorly
organized summary of six articles, far below the
requirement of 20 recent peer-reviewed scholarly articles
that connect directly to the topic. Again, while I will excuse
this deviation from the express directive on this occasion, it
is my expectation that you will substantially and/or fully
comply with my directives moving forward. Please be
aware that future failures to follow my express directives
may result in the consideration of corrective action as to

your conduct.

Substantively, your narrative provides no insights with regards to the veracity of whether reading is "taught the wrong way" as asserted by the assigned article from The New York Times. Of most concern is that your writing indicates a fundamental lack of proficiency in basic research methods. Your writing contains grammatical errors. None of your citations conform to academic standards as they lack information such as volume and page number, and only two of the six articles are current. One of your cited articles uses inconsistent publication dates. In your text, you cite "Jeanne Chall (1967)", then refer to it under references as "Chall, J.S. (1996)". Your submission does not meet the basic student learning outcomes required for all of our students in the course Research and Technology, GE 2020.

Therefore, I am directing you to complete GE2020, offered online, by Monday, October 14, 2019 (four weeks instruction). For details to register, you can contact Mr. Corey Vigdor, Acting Assoc. Dean, School of Online Learning. I am also directing that you to visit [*sic*] our Writing Center in the Nancy Thompson Learning Commons to improve your writing skills. You must complete these remedial assignments and resubmit the Week 1 assignment on or by Monday, October 1, 2019 before returning to your assignment originally scheduled for week 2, which will now be due Monday, October 28, 2019. Please be reminded that the original due date for the week 2 assignment was set for today, September 13.

41.     Upon information and belief, on or about September 13, the union filed a grievance with the University asserting that Defendant Green's refusal to produce a copy of the document which he claimed was confidential, and upon which Plaintiff's non-teaching assignment was based, violated Article XXIX of the CNA, which relates to the personnel files of the University's employees, their contents,  and what documents are required to be included in their personnel files and provided to the employee to whom the documents relate.

42.    On September 14, Defendant Vigdor sent Plaintiff an email saying

You have been enrolled in GE2026 Online. Your instructor for the course is Dr. Bridget Chapman. The course is located in Blackboard. To get there go to http://blackboard.kean.edu. Use your Kean email credentials to log in. This course will be located in the same area as your other courses but since you are enrolled as a student it will be towards the bottom of your list.

The following are things you need to know:

1.    This course is scheduled to be four weeks long.
2.    There are eight units in the course therefore you are expected to cover two units in each week.
3.    Each week is five days long. It begins on Monday and ends on Friday.
4.    Units contain a variety of learning activities such as assignments, readings, quizzes, discussions, resources, etc.
5.    The graded learning activities are always due by the end of the week.
6.    Your initial responses to the units discussion boards are always due by the end of the second day of the week which are Tuesdays.
7.    Since it is only you and Dr. Chapmen in the course the discussion requirements will be modified so that you only have to post your initial response and another response to Dr. Chapment [sic] for a   total of two per unit. Since there are two units per week this means a total of four posts. Also for each unit you must post on two separate days.
8.    You need to read all of the announcements when you enter the course.
9.    You need to go through the Getting Started area which will lead you to the Kean Online Orientation Quiz which you need to pass in order to see the Units in the course. Part of this will include the   downloading       of Respondus Lockdown Browser. Directions for this  are   in an announcement and in Getting Started.
10.    Communication with Dr. Chapman cannot happen via email. All communications must remain in the course. On the main menu you will see a Message area. This functions just like email.
11.    This course will become available to you on Monday September 16th.

43.    On September 16, Plaintiff attempted to follow Defendant Vigdor's instructions in order to access the Blackboard computer program. She had difficulty in doing so and emailed Vigdor, indicating she was having difficulty and asked him to clarify the instructions he had provided her. Vigdor responded to her email saying "[t]hank you for reaching out. Please be advised that you should direct any inquiries you have to Dr. Toney. Thank you and best of success in the academic year." Plaintiff replied "[t]he problem is that the instructions on Blackboard are unclear. I thought that you would be able to explain them to me."

44.    Plaintiff continued to have difficulty trying to utilize the Blackboard program. She sought assistance from students nearby, without success, and was unable to complete the assignments referenced in Defendant Vigdor's September 14 email.

45.    On September 19, Defendant Chapman sent Plaintiff an email saying:

> I have been checking the course and notice that you have not responded to any of the discussions for Units 1 and 2. You have also not submitted any assignments. The first two units come to an end on Sunday. Discussion posts cannot be accepted after the units have ended. Late work can be accepted according to the Course Due Dates link inside of Course information area on the main menu. I will be grading the Unit 1 and 2 work early next week. Please let me know if you need any assistance.

46.    The next day, September 20, Chapman sent Plaintiff another email saying:

> As a follow up to my previous message, it has just come to my attention that all units in this course end on Fridays, therefore, you should post all work today. If you can't get the work completed by the end of the day today, I will extend the due dates until Sunday for these first two units. Please submit all work for Units 1 and 2 on or before this Sunday 9/22.

47.    As of September 23, Defendant Green, who had indicated in his email of

September 9 that he would respond "in short order" to Plaintiff's request for a copy of

Mrs. Riley's report, which he claimed was confidential and the basis upon which she was

being given the non-teaching assignment, had not responded as promised. On September

23, Plaintiff accordingly sent Defendant Green an email demanding that he produce the

report:

> On Sept. 4, 2019 I sent you a request for a copy of the document which you referred to in a prior email to me as a confidential document and with respect to which you requested that I waive confidentiality and grant Kean University a release for its use. I refused.

> On Sept. 9, you sent me an email acknowledging receipt of my request and indicating that you would respond "in short order". As of today, Sept. 23, I have received neither a copy of the document in question, nor your response regarding whether you would, or would not, provide me with a copy of the document.

> I am entitled to be provided a copy of the document in question, both under the terms of the CBA, Article XXIX, as well as under New Jersey law.

> I have up to now been civil in my request that you provide me with a copy of the document, to which I am entitled by law. I am now demanding that you provide me with a copy of the document immediately.

48. Defendant Green responded the same day saying:

> Please be advised that, as has been communicated to your Union, the request[ed] documents related to the confidential Affirmative Action training remains under review. The University's position regarding whether you are entitled to any documents, to the extent they exist, pursuant to the contract has been relayed to Mr. Muraskin. If you wish to supply me with any non-contractual basis that entitled you to any such documents, I am happy to review.

> Please be guided accordingly.

(Emphasis supplied.)

49.   On September 24, Plaintiff arranged to see her personnel file. Her personnel file did not contain Mrs. Riley's report, nor did it contain any document which could be characterized as confidential or which related to the diversity training she had participated in.

50.   Thereafter, on September 27 Plaintiff emailed Defendant Toney saying:

> Since Saturday, Sept. 14, when I received an email from Dr. Vigdor and a copy was sent to you, informing me that I was enrolled in GE2026 online, I have had difficulty fulfilling the assignments. On Sunday, Sept. 15, I received an email from Professor Chapman with instructions as to How to Download and Use Respondus Lockdown Browser. On Monday, Sept. 16 I began with Steps to Getting Started and I proceeded to Download Respondus Lockdown Brower but it was difficult to download the browser. I wrote to Dr. Vigdor on Sept. 16 requesting his assistance because I found the directions on Blackboard unclear. On Sept. 17 he replied at 3:14 A.M. that I was to "reach out to Bridget Chapman who is the instructor in the course for any clarifications within the course." I could not find how to "reach out" to Professor Chapman. I called OCIS and a technician came to my office and told me that I should call Vanessa Avila since she was the person who assists faculty and students with Blackboard. On Wednesday, Sept. 18, Ms. Avila met with me in my office and helped me download the browser. She showed me how to navigate the various items on the Blackboard screen. I read the Online Student Orientation and Quiz instructions, but was unable to indicate my answers to the questions. I finally figured out how to take the test, but since I had to obtain 100% correct, it took me three attempts to get the items all correct. I sent the results of the Quiz to My Grades for Professor Chapman to view on Sept. 17. She replied on Sept. 18 and wrote: Good luck with Unit 1 and let me know if you have questions. I proceeded to Unit 1: What is Research? I read the material and the reference to the Custom Bundle: Kean University, (2015). I purchased the book at the Kean University Bookstore Wednesday evening. I began reading the first chapter on Thursday but the font was so small that I had difficulty reading the

chapter. I was able to complete reading the first 10 pages and expected to complete the chapter on Friday, Sept. 20. I researched purchasing a magnifier so I could read the chapters but have not found where to buy one as yet. I will call the organization for the blind in New York City on Wednesday to inquire where I may purchase this device. I did not finish reading Chapter 18 which was also assigned. On Tuesday, Sept. 24, Professor Chapman wrote that she has graded me according to course guidelines for Units 1 and 2. When I looked under Messages there was no grade and I also looked under My Grades and found no grade. I concluded she graded me 0. Today, Friday, Sept. 27 I was to complete Units 3 and 4. I have not done so because I do not understand what I am to do. She wants me to write on the Message board if I have questions. I have many questions that cannot be answered by my writing them on the Message board. I will be getting someone to help me on Wednesday, Oct. 2 when I return after Rosh Hashanah.

I have spent hours struggling to figure out what I am to do. I have found the process frustrating and confusing.

51.     Defendant Toney replied to Plaintiff's email on October 2 saying:

Please be advised that I have been informed that you did not complete any assignments in GE 2020 [*sic*] as of September 24th and have achieved a grade of zero in you required assignments. I have reviewed you explanations for your inability to complete your research assignments and find them unconvincing. I am equally unmoved by your refusal to communicate as directed via the message board for your online course.

As a courtesy, and in lieu of a formal corrective and/or disciplinary action, this e-mail serves as an informal counseling regarding your unsatisfactory job performance as it relates to your assignments. Specifically, the failure of a Professor of your rank to complete a single assignment of work that can, with moderate effort, be completed or substantially completed by college freshmen is unacceptable and will not be tolerated moving forward.

Please be advised that I am moving your deadlines one week to adjust for your failure to perform any work, achieving a grade of zero and refusing to request assistance within the framework provided to you. Please be advised

that any further unsatisfactory job performance may result
in formal corrective action and/or disciplinary referral.

I look forward to reviewing your completed assignments
within the time frames provided.

(Emphasis supplied.)

52.    On October 4, Defendant Green emailed to the union a "tentative
decision" regarding the union's grievance relating to Green's use of a confidential
document as the basis for giving Plaintiff a non-teaching assignment, a document which
he refused to provide either to Plaintiff or the union. Defendant Green denied the
grievance, contending that the conduct in question did not violate Article XXIX of the
CNA. Plaintiff has requested that the union take the grievance to arbitration and is
awaiting the union's decision in that regard.

53.    At 9:46 a.m. on October 11, Defendant Chapman sent Plaintiff an email
saying "I have just graded Units 5 & 6 for this course with a zero for all assignments.
You have not submitted any work for the course to date. According to the calendar for
the course, all work for the last two units 7 & 8 are due today. Due to the holiday earlier
in the week, I can extend the deadline for those assignments related to Units 7 & 8 until
next Wednesday 10/16. Please reach out t me if you have questions."

At 11:56 a.m. the same day, Defendant Chapman sent Plaintiff a second email,
saying "[g]iven that you have not yet completed any work for the course and that there
were the religious holidays this week, I can extend the deadline for submission of
materials to Wednesday Oct. 23. Please feel free to contact me if you have any
questions."

54.    On October 17, Plaintiff responded to Defendant Chapman saying:

I am responding to your emails dated October 11, 2019.

I have been sick with fever, bronchitis and sciatica in my right hip and throughout the right side of my body. I am under two doctors' care; one is my family physician and the other is my orthopedic surgeon. I had an appointment on Tuesday, October 15 at the Hospital for Special Surgery in New York City for an injection in my right hip. I have documentation from both physicians and the letters have been presented to Ms. Yrelyes Tipanes in Human Resources as well as to Dr. Toney via his secretary, Judy Pena. Unfortunately, I am in pain and am waiting to hear from my doctor at the Hospital for Special Surgery.

I have been summoned to serve as a Juror in Kings County Supreme Court, 320 Jay Street, Brooklyn, NY on Wednesday, October 23, 2019 at 8:30 AM. The instructions stated that I must call the Court after 5 PM the evening before to receive updated instructions on whether t report on October 23.

I will do the best that I can to complete the assignments for Units 7 and 8, but it will require that I forego celebrating a Jewish holiday [Sukkot] which began on Sunday, October 13 at sundown and ends on Tuesday, October 22.

55. On October 19, Defendant Toney sent an email to Plaintiff saying:

I am following up on my previous 3-mail to you dated October 2, 2019. Please be advised that I have been informed that you continue to have not completed any of your assignments as of October 18th and have achieved a score of zero in your required assignments for GE 2020 [*sic*]. As I have advised, a continuation of this conduct would result in additional follow-up and you will be receiving corrective action regarding same in short order.

Please be advised that I am moving your deadlines to adjust for your failure to perform any work, achieving grade of zero and refusing to request assistance within the framework provided to you and your assignments are now due November 1. The original deadline was October 14 to allow four weeks of instruction to complete GE 2020 [*sic*]. As a reminder, you were directed on September 13 to visit our Writing Center in the Nancy Thompson Learning Commons to improve your writing skills. Please be advised

that continued unsatisfactory job performance will result in additional formal corrective action and/or disciplinary referral. I look forward to reviewing your completed assignments within the time frames provided. As discussed, research on literacy is an important contribution to aid planning of our education curriculum.

Going forward you will be recording your time via our electronic system Kronos. Please report directly to Human Resources at 9:30am on Monday, October 21 and ask to speak to Linnette Guardamino as she will provide you with the necessary directions for this timekeeping process. You will not need to sign in on Monday morning if you comply with this directive.

Thank you in advance for your cooperation.

56.    Then on October 20, Plaintiff emailed Defendant Toney saying:

I have read your email dated Saturday, Oct. 19, 2019. I cannot meet with Linnette Guardamino at 9:30am on Monday, Oct. 20 at Hume Resources because I must attend Services at my Synagogue for Yiskor [memorial prayer service for deceased relatives] which begins at 10:00am. I will drive to Kean University when the service is completed and go to Human Resources.

Plaintiff accordingly met with Ms. Guardamino at noon that day.

57.    On October 28, Plaintiff received an email from Defendant Chapman informing her that Chapman was giving her a failing grade for the GE2026 course.

58.    Thereafter, on November 8, Plaintiff received an email from the Office of the Provost directing her to appear at the Provost's office on Tuesday November 12.  As directed, Plaintiff met with Defendant Toney who directed Plaintiff to undergo "counseling" relating to her performance on the imposed make-work research projects of her non-teaching assignment.  Two days later, Defendant Toney sent a follow-up email to Plaintiff purporting to summarize the November 12 meeting and attempting to justify the

imposed assignments as representing "an important contribution that will guide us to provide the best service possible for our students" saying:

> This is a follow up after the meeting in my office on November 12 to discuss your Counseling Memo regarding failure to complete your non-teaching assignments. I am directing you to visit the Writing Center in the Learning Commons to improve your writing skills by November 18. Please note that you were originally directed to do so on September 13. You were also directed on September 13 to resubmit your paper for Assignment I by October 21, but failed to do so. I am now directing you to resubmit your paper for Assignment I after visiting the Writing Center, by November 22.
>
> We also discussed that you did not complete any assignments in GE2020, receiving a score of 0. With your previous deadline extensions, you were directed to complete this course by the original deadline of October 14, to allow four weeks of instruction to complete GE 2020. I then extended your deadline to November 1. I am now granting you the opportunity to complete this course by starting over, with another deadline extension due December 16, to allow at least another four weeks of instruction. I remind you that completion of this course is critical to improve your research skills.
>
> As discussed, a thoughtful analysis of the literature on literacy is an important contribution that will guide us to provide the best service possible for our students. Your background and analysis of the current literature can serve as a contribution towards this goal. Thank you in advance for your anticipated cooperation.

59.    All of the actions by Defendants hereinbefore set forth arose out an alleged violation of an unconstitutional state policy by Plaintiff and in violation of Plaintiff's procedural and substantive due process rights. Any other attempted justification is pure pretext.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE FIRST AMENDMENT UNDER 42 U.S.C. § 1983

60.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

61.     The free speech provision of the 1st Amendment of the United States Constitution applies to the States pursuant to the 14th Amendment.

62.     Plaintiff is accordingly entitled to the protection of her 1st Amendment right to freedom of speech pursuant to 42 U.S.C. § 1983, which states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

63.     The following factors indicate that Kean does not enjoy 11th Amendment immunity from being sued in federal court: (1) The State of New Jersey would not be required to pay a judgment in the event Plaintiff prevails on any of her claims against Kean; (2). Kean retains the right to independently incorporate, N.J.S.A § 18A:64-6(a); (3) Kean, pursuant to statute, enjoys a degree of autonomy not enjoyed by other state agencies, N.J.S.A. 18A:3B-27; and (4), the Higher Education Restructuring Act of 1994, N.J.S.A. 18A:3B-2, *et seq.*, has significantly increased the authority that Kean's governing board exercises, thereby providing the University with substantially greater autonomy than other State agencies.  See, generally, Fitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3rd Cir. 1989); Ventura v. Montclair State Univ., 2011

WL6339656, *6 (D.N.J. 2011).

64.     Since Kean does not enjoy 11th Amendment immunity as an alter ego of the State of New Jersey, it qualifies as a "person" under 42 U.S.C. §1983. See Fuchillav. Layman, 109 N.J. 319 (N.J. 1988).

65.     Each of the individually named Defendants, and in particular Defendants Farahi, Green and Toney, have final policy making authority which renders Kean liable for their decisions and conduct. See Pembauer v. City of Cincinnati, 475 U.S. 469 (1986).

66.     The Policy is facially unconstitutional for three reasons: (1) it is neither content nor viewpoint neutral; (2) many of its provisions are unconstitutionally vague; (3) many of its provisions are unconstitutionally overbroad. The Policy is so permeated with unconstitutional provisions that it is unconstitutional in its entirety and unenforceable.

67.     The unconstitutionality of the Policy was clearly established by numerous legal precedents many years before the events giving rise to this lawsuit occurred. See, e.g., R.A.V. v. St. Paul, 505 U.S. 377 (1992); Baggett v. Bullitt, 377 U.S. 360 (1964); Broadrick v. Oklahoma, 413 U.S. 601 (1973); Dejohn v. Temple Univ., 537 F.3d 301 (3d Cir. 2008); Sypniewski v. Warren Hills Regional Bd., 307 F.3d 243 (3d Cir. 2002); Saxe v. State College Area School District, 240 F.3d 200 (3d Cir. 2001); State v. Vawter, 136 N.J. 56 (1994).

68.     Since the Policy is unconstitutional, Plaintiff may not be deemed to have violated the Policy with respect to any of the alleged conduct she was accused of. A public employee cannot be held to have violated an unconstitutional statute, ordinance, regulation or policy.

69.     Through their actions and conduct, as hereinbefore set forth, defendants,

individually and collectively acting under color of state law, intended to, and did in fact, violate and deprive Plaintiff of her rights under the 1st amendment and in violation of 42 U.S.C. § 1983.and are liable to Plaintiff for consequential damages.

**WHEREFORE**, Plaintiff demands judgment against defendants individually, jointly, severally and in the alternative for injunctive relief, compensatory damages plus interest, attorney's fees and costs and such other relief which may be available under state or federal law or the court deems equitable and just.

## COUNT II

### VIOLATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983, AS ENTAILED BY THE FOURTEENTH AMENDMENT

70.     Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

71.     Since Plaintiff is a tenured professor, she has property and liberty interests that are protected under the 14th Amendment from infringement without procedural due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985); Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299 (1986).

72.     The linchpins of procedural due process are notice and the opportunity to be heard at a meaningful time, and in a meaningful manner. Mullane v. Central Hanover Tr. Co., 339 U.S. 306 (1950).

73.     While Plaintiff is being paid her full salary during her non-teaching assignment, since she is not teaching any classes, the assignment deprives her of opportunities for scholarship and advancement which would increase her income, as well as the opportunity to apply for other teaching assignments which she regularly conducted

during the summer for additional income. The non-teaching assignment has consequently had a negative impact on her future income and therefore on her property interests.

74.     Defendant Green's refusal to provide Plaintiff with the document he claims has warranted her being given a non-teaching assignment has deprived her of notice of what exactly she is being accused of that justifies the non-teaching assignment.

75.     In addition, Plaintiff has been denied an opportunity to be heard, since she was never provided the opportunity for a hearing to defend herself, against a charge the nature of which she has never been told. Nor can Kean defend itself based on the provision in the CNA relating to its authority to issue a non-teaching assignment, since the provision does not provide for a hearing. The grievance procedure does not provide for a hearing and is not a substitute for Plaintiff's due process rights. Neither Kean nor the union has the right to abrogate Plaintiff's due process rights.

76.     The University has consequently infringed on Plaintiff's property interest without affording her procedural due process, violating the 14th Amendment.

77.     The non-teaching assignment has required Plaintiff to work beneath her status as a tenured professor with a Ph.D. and has stigmatized her standing in the academic community, converting her from a teaching professor to the equivalent of student intern performing research projects and taking tests in the GE2026 course, to be reviewed and graded by Defendants Toney and Chapman.

78.     Through their actions and conduct, as hereinbefore set forth, defendants, individually and collectively acting under color of state law, intended to, and did in fact, violate and deprive Plaintiff of her liberty interests under the 14th amendment without procedural due process in violation of 42 U.S.C. § 1983.and are liable to Plaintiff for

consequential damages.

**WHEREFORE**, Plaintiff demands judgment against defendants individually, jointly, severally and in the alternative for injunctive relief, compensatory damages plus interest, attorney's fees and costs and such other relief which may be available under state or federal law or the court deems equitable and just.

<u>**COUNT III**</u>

<u>**VIOLATION OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983, AS ENTAILED BY THE FOURTEENTH AMENDMENT**</u>

79.    Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

80.    The non-teaching assignment(s) was/were imposed on Plaintiff after the previously imposed disciplinary actions for her purported violations of the Policy had been completed, and without an allegation that she had committed another violation of the Policy or any other infraction.

81.    Kean's conduct in giving Plaintiff a stigmatizing non-teaching assignment without explanation, without divulging the contents of the confidential document which Defendant Green has refused to produce, and without affording Plaintiff her procedural due process rights, was arbitrary and capricious, and thereby violated Plaintiff's substantive due process rights, and must be rescinded as unconstitutional.

82.    Through their actions and conduct, as hereinbefore set forth, defendants, individually and collectively acting under color of state law, intended to, and did in fact, violate and deprive Plaintiff of her substantive due process rights under the 14th amendment in violation of 42 U.S.C. § 1983.and are liable to Plaintiff for consequential

damages.

**WHEREFORE**, Plaintiff demands judgment against defendants individually, jointly, severally and in the alternative for injunctive relief, compensatory damages plus interest, attorney's fees and costs and such other relief which may be available under state or federal law or the court deems equitable and just.

## <u>COUNT IV</u>

## <u>VIOLATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT BY FAILING TO COMPLY WITH THE REQUIREMENTS OF THE NEW JERSEY TEACHER TENURE ACT</u>

83.    Plaintiff incorporates herein each and every of the prior averments as if fully stated herein.

84.    Under the 14th Amendment, property rights and the process which is due in the event of infringement on a public employee's property rights, are defined by state law.  <u>Loudermill</u>, <u>supra</u>.

85.    In New Jersey, a tenured professor's property rights and the process which is due in the event such property rights are infringed on are defined under the New Jersey Teacher Tenure Act, <u>N.J.S.A.</u> 18A:6-10, *et seq.*

86.    The New Jersey Teacher Tenure Act states, in relevant part, <u>N.J.S.</u> 18A:6-18:

> <u>No professor</u>, associate professor, assistant professor, instructor, supervisor, registrar, teacher or other persons <u>employed in a teaching capacity, in any State college, county college or industrial school who is under tenure during good behavior and efficiency shall be dismissed</u> or subject to reduction of salary, <u>except for inefficiency, incapacity, conduct unbecoming a teacher or other cause</u>. <u>Written charge of the cause or causes preferred against an individual shall be signed by the person or persons making the same and filed with the board of trustees of said college</u> or school. Upon determination that the matter is a contested case, the board shall assign the matter of hearing and initial decision to the

Office of Administrative Law. A final decision shall be rendered by the full board of trustees. The person charged may be represented by counsel at all times and have compulsory process to compel the attendance of witnesses to testify therein, as provided by law. Contested case hearings shall be conducted under rules and regulations established pursuant to the "Administrative Procedure Act[.]"

(Emphasis supplied.)

87.     The non-teaching assignment, whereby Plaintiff was consigned to performing the functions of a student, performing research assignments and writing summaries of her research, to be reviewed and graded by Toney, and being required to take the online course GE2026, during which she was required to read material and take tests by specified deadlines, to be graded by Chapman, constituted a dismissal from her position as a tenured teaching professor at Kean.

88.     There was no evidence that during her prior non-teaching assignment during the Spring, 2019 term, Plaintiff had engaged in any conduct which demonstrated inefficiency, incapacity, conduct unbecoming a teacher or any other cause which would justify her dismissal from her status as a teaching professor.

89.     The non-teaching assignment was imposed without the filing of any charges with Kean's Board of Trustees, and without any hearing before the Office of Administrative Law, thereby violating the provisions of the Teacher Tenure Act and in turn violating Plaintiff;s right to procedural due process under the 14th Amendment.

90.     Through their actions and conduct, as hereinbefore set forth, defendants, individually and collectively acting under color of state law, intended to, and did in fact, violate and deprive Plaintiff of her rights and property interests under the Teacher Tenure Act in violation of both the Tenure Act and 42 U.S.C. § 1983.and are liable to Plaintiff for consequential damages.

**WHEREFORE**, Plaintiff demands judgment against defendants individually, jointly, severally and in the alternative for injunctive relief, compensatory damages plus interest, attorney's fees and costs and such other relief which may be available under state or federal law or the court deems equitable and just.

DATED:  November 15, 2019                    WILLIAMS CEDAR LLC

By:          /s/  Kevin Haverty
KEVIN HAVERTY
8 Kings Highway West, Suite B
Haddonfield, NJ  08033
(856) 470-9777 (Tel)
(888) 311-4899 (Fax)
Khaverty@williamscedar.com
Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby demands trial by jury for all issues so triable.

DATED:  November 15, 2019                    WILLIAMS CEDAR LLC

By:          /s/  Kevin Haverty
KEVIN HAVERTY
8 Kings Highway West, Suite B
Haddonfield, NJ  08033
(856) 470-9777 (Tel)
(888) 311-4899 (Fax)
Khaverty@williamscedar.com
Attorney for Plaintiff